# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DANIEL RODRIGUEZ, ) | |
| ) | |
| Movant, ) | 06 C 6129 |
| ) | |
| v. ) | |
| ) | Hon. Charles R. Norgle |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM OPINION

CHARLES R. NORGLE, District Judge

Before the Court is Daniel Rodriguez's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. For the following reasons, the Motion is denied.

## I. BACKGROUND

### A. Facts

In the summer of 1997, government agents began an investigation into the activities of a Latin Kings street gang faction operating in Glendale Heights, Illinois. The government's investigation revealed that the hierarchically structured Latin Kings were involved in the distribution of a Schedule II narcotic drug controlled substance, namely cocaine, in the Glendale Heights area. Movant Daniel Rodriguez ("Rodriguez") was a member of the Latin Kings Glendale Heights faction at the time of the government's investigation, and was involved in the Latin King's distribution of cocaine in Glendale Heights.

1

## B. Procedural History

The Grand Jury handed down a fifteen count indictment against eleven Latin King Defendants on October 24, 2001, one of whom was Rodriguez. The indictment charged the Defendants with conspiring to possess cocaine with intent to distribute, in violation of 21 U.S.C. §§ 846 and 841(a)(1), and distributing cocaine, in violation of 21 U.S.C. § 841(a)(1). The indictment alleged in part that Defendant Ricky Smith ("Smith") purchased multi-ounce quantities of cocaine from various sources in Chicago and redistributed that cocaine to other Defendants including Rodriguez. Rodriguez and other Defendants would then allegedly repackage the cocaine into smaller quantities and sell it at various locations in Glendale Heights. The indictment also charged Rodriguez with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).

On November 15, 2002, Rodriguez entered a blind plea of guilty to Count One, the conspiracy charge, Counts Seven and Fourteen, the distribution charges, and Count Fifteen, the firearm charge. Because there was no written plea agreement, Rodriguez's Sentencing Guidelines calculations remained to be determined at his sentencing hearing.

The Court held Rodriguez's sentencing hearing on May 28, 2003. Smith, who had cooperated with the government, testified regarding his and Rodriguez's involvement with the Latin King's drug distribution operations in Glendale Heights. Smith indicated that he and Rodriguez were both members of the Latin Kings, and that they both regularly participated in gang meetings and drug dealing. Smith testified specifically that he, Rodriguez, and other members of the Latin Kings obtained cocaine from a source in Chicago and packaged it for resale in Glendale Heights. In addition, Smith testified that Rodriguez cooked powder cocaine into

2

crack cocaine, and that Rodriguez was involved in selling crack cocaine. Rodriguez testified at the sentencing hearing as well, and admitted that Smith and another individual had supplied him with cocaine, and that he had sold cocaine in Glendale Heights.

Based on Smith and Rodriguez's testimony, as well as other plea agreements already entered into by co-Defendants, the Court determined that Rodriguez's relevant conduct involved between five and fifteen kilograms of powder cocaine. Rodriguez's base offense level was therefore 32. See U.S.S.G. § 2D1.1(c)(4). The Court increased Rodriguez's offense level by two for possession of a weapon, see id. § 2D1.1(b)(1), but reduced it by three levels because Rodriguez accepted responsibility for his actions, see id. § 3E1.1, for a resulting offense level of 31. Combined with a criminal history category of VI, Rodriguez's Guidelines range was 188 months to 235 months. The Court sentenced Rodriguez to 210 months imprisonment on the drug charges, as well as a concurrent 120 month sentence on the gun charge.

On appeal, Rodriguez asserted that his Sixth Amendment rights had been violated when the District Court believed it was bound by the Sentencing Guidelines during the May 28, 2003 sentencing hearing. See United States v. Booker, 543 U.S. 220, 245 (2005) (making the federal Sentencing Guidelines advisory rather than mandatory). The Seventh Circuit issued a limited remand pursuant to United States v. Paladino, 401 F.3d 471, 483-84 (7th Cir. 2005) in order to ask the District Court whether it would have decreased Rodriguez's sentence had it been aware that the Guidelines were merely advisory. United States v. Rodriguez, Nos. 03-2523 & 03-2891, slip op. at 2 (7th Cir. July 15, 2005) (unpublished order). In an Opinion and Order issued March 16, 2006, the District Court determined that it would not have lowered Rodriguez's sentence if the Guidelines were not mandatory. United States v. Rodriguez, No. 01-891 (N.D. Ill. March 16,

3

2006 ) (unpublished order). The Seventh Circuit affirmed. United States v. Rodriguez, 178 Fed. Appx. 572 (7th Cir. April 27, 2006).

On January 5, 2009, Rodriguez filed a motion pursuant to 18 U.S.C. § 3582 for a reduction in his sentence based on the recently amended sentencing guidelines for crack cocaine offenses. Because Rodriguez's sentence was based on his involvement with powder cocaine and not crack, the Court determined that it did not have subject-matter jurisdiction and denied the motion. Minute Order, May 20, 2009.

On November 9, 2006, Rodriguez filed the instant Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. Ground One of Rodriguez's Motion asserts that he is innocent of any involvement with the five to fifteen kilograms attributed to him at sentencing. Ground Two asserts ineffective assistance of counsel at sentencing. In a Supplemental Pleading filed December 23, 2008, Rodriguez asserts that he has not received proper credit from the Bureau of Prisons for time served, and he repeats his assertion that the Court improperly applied the Sentencing Guidelines. The Motion is fully briefed and before the Court.

## II. DISCUSSION

### A. Standard of Decision

Section 2255 allows a person convicted of a federal crime to vacate, set aside, or correct his sentence. This relief is available only in limited circumstances, such as where an error is jurisdictional, of Constitutional magnitude, or there has been a "complete miscarriage of justice." See Harris v. United States, 366 F.3d 593, 594 (7th Cir. 2004). This statute states:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in

4

violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside, or correct the sentence.

28 U.S.C. § 2255 ¶ 1. If the court determines that any of these grounds exists, it "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255 ¶ 2. In making that determination, the court must review the evidence and draw all reasonable inferences from it in a light most favorable to the government. See United States v. Galati, 230 F.3d 254, 258 (7th Cir. 2000); Carnine v. United States, 974 F.2d 924, 928 (7th Cir. 1992).

Section 2255 petitions are subject to various bars, including that of procedural default. Section 2255 petitions are "'neither a recapitulation of nor a substitute for a direct appeal.'" McCleese v. United States, 75 F. 3d 1174, 1177 (7th Cir. 1996) (citations omitted). Therefore, a § 2255 motion cannot raise: (1) issues that were raised on direct appeal, unless there is a showing of changed circumstances; (2) non-Constitutional issues that could have been raised on direct appeal, but were not; and (3) Constitutional issues that were not raised on direct appeal. See Belford v. United States, 975 F.2d 310, 313 (7th Cir. 1992).

There are two exceptions to the procedural default rule: (1) if the movant demonstrates cause for failing to raise the issue and actual prejudice resulting therefrom; or (2) the court's refusal to consider the Constitutional issue would result in a fundamental miscarriage of justice, which requires a showing of actual innocence. See Belford, 975 F.2d at 313 (collecting authority); see also McCleese, 75 F.3d at 1177-78 (discussing fundamental miscarriage of justice). In light of these principles, the court examines Rodriguez's motion.

## B. Rodriguez's Claims under § 2255

### *1. The Amount of Drugs the Court Attributed to Rodriguez at His Sentencing Hearing*

Rodriguez has submitted his § 2255 Motion pro se, and as a result, it is difficult for the Court to discern the precise nature of his first assertion. Rodriguez is either claiming that he is actually innocent of any involvement with cocaine, or he is asserting that the Court improperly calculated his Sentencing Guideline range based on the Court's mistaken determination regarding the actual amount of cocaine attributable to Rodriguez. However, Rodriguez raised neither of these claims on appeal. According to the Seventh Circuit's July 15, 2005 Order, Rodriguez made two assertions on appeal: that his Sixth Amendment rights were violated when the District Court thought it was bound by the Sentencing Guidelines, see Booker, 543 U.S. at 245, and that the District Court violated the first rule articulated in Booker, 543 U.S. at 244 (a Court cannot increase a sentence beyond a statutory maximum based on facts not admitted by the defendant nor found by a jury beyond a reasonable doubt). United States v. Rodriguez, Nos. 03-2523 & 03-2891, slip op. at 2 (7th Cir. July 15, 2005) (unpublished order). Because Rodriguez did not raise either of his instant claims on appeal, and has not shown cause for or prejudice from his failure to raise these issues, he is barred from presenting them in this § 2255 Motion. See Belford, 975 F.2d at 313.

In addition to being procedurally barred, Rodriguez's claim of actual innocence is meritless. Rodriguez has presented the Court with nothing more than his unsupported assertions in support of his claim of actual innocence. He has submitted no affidavits nor has he made any other sort of evidentiary proffer that would show he is innocent of the charges to which he pled guilty. See Bousley v. United States, 523 U.S. 614, 623 (1998) ("To establish actual innocence,

6

petitioner must demonstrate that 'it is more likely than not that no reasonable juror would have convicted him.' ... [A]ctual innocence means factual innocence, not mere legal insufficiency.") (quoting Schlup v. Delo, 513 U.S. 298, 327-28 (1995)).

As to Rodriguez's claim that the Court improperly calculated his Guideline range, even if it were not procedurally barred because it was not brought on appeal, the Court could still not reach the merits of this claim. The Seventh Circuit has clearly indicated that "errors in the implementation of the Sentencing Guidelines are generally not cognizable in a collateral attack." Buggs v. United States, 153 F.3d 439, 443 (7th Cir. 1998) (citing Scott v. United States, 997 F.2d 340, 341-43 (7th Cir. 1993)). Rodriguez's first claim under § 2255 therefore fails.

## 2. *Ineffective Assistance of Counsel at Sentencing*

Next, Rodriguez asserts that his attorney was constitutionally ineffective for failing to present a pro se motion, with an attached letter from Smith, to the Court at sentencing. This letter, Rodriguez insists, would have shown that he was actually innocent of any involvement with the five to fifteen kilograms of cocaine ultimately attributed to him.

In order to establish that his trial counsel was ineffective, Rodriguez must "show that [his] counsel's performance was deficient, and that the deficiency prejudiced [his] defense." See Wiggins v. Smith, 539 U.S. 510, 521 (2003) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). An attorney's performance is deficient if it falls "below an objective standard of reasonableness." Wiggins, 539 U.S. at 521 (quoting Strickland, 466 U.S. at 688). Prejudice is established by showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Benefiel v. Davis, 357 F.3d 655, 662 (7th Cir. 2004) (quoting Strickland, 466 U.S. at 694).

7

When a court reviews an ineffective assistance of counsel claim, the court's review is "highly deferential" to the attorney, "with the underlying assumption that 'counsel's conduct falls within the wide range of reasonable professional assistance.'" United States v. Holman, 314 F.3d 837, 840 (7th Cir. 2002) (quoting Strickland, 466 U.S. at 689). There is therefore a strong presumption that Rodriguez's counsel performed reasonably. See Strickland, 466 U.S. at 690; see also Cooper v. United States, 378 F.3d 638, 641 (7th Cir. 2004). To succeed in his claim, Rodriguez must show "errors so serious that counsel was not functioning as the 'counsel' guaranteed [to him] by the Sixth Amendment . . . ." See Holman, 314 F.3d at 839 (quoting Strickland, 466 U.S. at 687).

In this case, Rodriguez complains that his attorney failed to present a pro se motion to the Court during the sentencing hearing. A criminal defense attorney's decision not to present a motion drafted by his or her client, especially at the sensitive sentencing phase of the proceedings, is clearly a strategic decision best left to the discretion of counsel. The Court therefore will not engage in second guessing, or "Monday morning quarterbacking," regarding counsel's decision not to present Rodriguez's pro se motion. See Harris v. Reed, 894 F.2d 871, 877 (7th Cir. 1990). After examining the record in this case, the Court can find no indication that Rodriguez's attorney was not functioning as the "'counsel' guaranteed [to him] by the Sixth Amendment . . . ." See Holman, 314 F.3d at 839 (quoting Strickland, 466 U.S. at 687). Rodriguez's second claim under § 2255 therefore fails.

### 3. *Improper Credit for Time Served*

Finally, Rodriguez asserts that the Bureau of Prisons has improperly refused to credit his presentence time served towards his 210 month sentence. This claim is not cognizable in a §

8

2255 motion. See Valona v. United States, 138 F.3d 693, 694 (7th Cir. 1998) (a motion seeking relief on the grounds that a sentence is being improperly executed should be filed pursuant to 28 U.S.C. § 2241). "The proper manner for [movant] to challenge the Bureau of Prison's execution of her sentence is by filing a petition for writ of habeas corpus, 28 U.S.C. § 2241, not a motion under 28 U.S.C. § 2255." Graves v. United States, No. 97-1185, 1997 U.S. App. LEXIS 23194, at *3 (7th Cir. Aug. 29, 1997) (citing Coates v. Smith, 746 F.2d 393, 396 (7th Cir. 1984)). Rodriguez's final claim under § 2255 therefore fails.

Should Rodriguez decide to file a § 2241 petition, he should be aware that the proper venue for such petitions is not in the district that originally sentenced the petitioner, but the district where the petitioner is currently held. Id. Bureau of Prison records indicate that Rodriguez is currently incarcerated at the FCI Yazoo City (Mississippi) Federal Corrections Complex, in the Southern District of Mississippi.

### III. CONCLUSION

For the foregoing reasons, Rodriguez's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody is denied.

IT IS SO ORDERED.

ENTER:

CHARLES RONALD NORGLE, Judge
United States District Court

DATED: May 29, 2009